IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DARWIN NATIONAL ASSURANCE COMPANY,<br><br>          Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>BLUECROSS BLUESHIELD OF TENNESSEE, INC.,<br><br>          Defendant. | CIVIL ACTION NO. 1:14-CV-296 |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC.,<br><br>          Counterclaim Plaintiff,<br><br>v.<br><br>DARWIN NATIONAL ASSURANCE COMPANY, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, ILLINOIS UNION INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, and HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>          Counterclaim Defendant. | |

## ANSWER OF DARWIN NATIONAL ASSURANCE COMPANY TO COUNTERCLAIMS

COMES NOW Plaintiff/Counterclaim Defendant Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied World"), by and through undersigned counsel, and files this its Answer to the Counterclaims filed by

Defendant/Counterclaim Plaintiff BlueCross BlueShield of Tennessee, Inc. ("BCBST") as follows:

## FIRST DEFENSE

Part or all of BCBST's Counterclaim fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

BCBST's Counterclaim for indemnity, including **Defense Costs**, allegedly incurred, or that BCBST alleges may be incurred, fails because the underlying claims asserted against BCBST do not fall within the scope of coverage provided by the terms, conditions, exclusions, and other provisions of the insurance contract.

## THIRD DEFENSE

BCBST brings the instant Counterclaim relating to the MDL litigation referred to as In Re: Blue Cross Blue Shield Antitrust Litigation, Master File No 2:13-cv-20000-RDP (the "MDL Action"). In its Counterclaim, BCBST seeks a declaration regarding its rights under the Health Care Organization Directors and Officers Liability Insurance Policy, number 0304-4558, issued to BCBST for the policy period March 1, 2012 to March 1, 2013 (the "Darwin Policy").

No coverage exists under the Darwin Policy for the liability alleged in the MDL Action because (i) the MDL Action is a **Related Claim** to the prior class action litigation styled Love v. Blue Cross Blue Shield Assoc., No. 03-21296 (S.D. Fla.) (originally titled Thomas v. Blue Cross Blue Shield Assoc.) ("Love") and was first made prior to the inception of the Darwin Policy; (ii) the MDL Action alleges acts done by BCBST in the performance of **Managed Care Activities** and therefore is excluded under Exclusion (N); (iii) the **Claim** is derived from essentially the same facts, or the same or related **Wrongful Acts**, as alleged in Love and therefore is excluded

- 2 -

under Exclusion (D); and (iv) the **Claim** arises out of essentially the same facts, or the same or related **Wrongful Acts**, as alleged in the prior <u>Love</u> litigation, which is a **Claim** reported prior to the Inception Date of the Policy and therefore is excluded under Exclusion (E).

## FOURTH DEFENSE

BCBST's Counterclaim for bad faith damages under Tenn. Code § 56-7-105(a) fails because the statute does not apply to the insurance policy issued by Allied World, nor does it permit BCBST to recover a penalty in this case.

## FIFTH DEFENSE

Allied World pleads all of the terms, conditions, exclusions, and other provisions of the Darwin Policy that may apply as a defense to BCBST's Counterclaim or that subsequently may be determined to apply based upon discovery in this action or other investigation.

## SIXTH DEFENSE

There is no coverage for the liability alleged in the MDL Action because BCBST's claim under the Darwin Policy is barred by the doctrine of waiver.

## SEVENTH DEFENSE

There is no coverage for the liability alleged in the MDL Action because BCBST is estopped from asserting a claim under the Darwin Policy.

## EIGHTH DEFENSE

There is no coverage for the liability alleged in the MDL Action because BCBST's claim under the Policy is barred by the doctrine of laches.

**NINTH DEFENSE**

Allied World has reasonable and legitimate bases to contest coverage for the MDL Action under the Darwin Policy. Therefore, there is no basis upon which to find bad faith.

**ANSWERS TO SPECIFIC AVERMENTS**

In response to the numbered allegations of BCBST's Counterclaim, Allied World responds as follows:

1. BCBST is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in the State of Tennessee.

**ANSWER:** **Admitted.**

2. Darwin is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Connecticut.

**ANSWER:** **Admitted as of the date the Complaint was filed.**

3. Travelers is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

4. Illinois Union is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in the Commonwealth of Pennsylvania.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

5.      Lexington is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Massachusetts.

**ANSWER:      Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

6.      Homeland is a corporation organized and existing under the laws of the State of New York with its principal place of business in the State of Minnesota.

**ANSWER:      Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

7.      Travelers, Illinois Union, Lexington and Homeland are proper parties to this Counterclaim pursuant to Fed. R. Civ. P. 13(h) and 19(a)(1)(A) because in their absence, the court cannot accord complete relief among the existing parties.

**ANSWER:      Allied World denies that BCBST is entitled to any relief from Allied World and therefore denies that additional parties are necessary regarding BCBST's claims against Allied World.  Allied World is without knowledge or information sufficient to form a belief as to whether BCBST is entitled to any relief from Travelers, Illinois Union, Lexington, and/or Homeland.  Allied World is without knowledge or information sufficient to form a belief as to whether these companies are necessary parties to this action.**

8.      Travelers, Illinois Union, Lexington and Homeland are proper parties to this Counterclaim pursuant to Fed. R. Civ. P. 20(a)(2) because relief sought by SGCI against them

arises out of the same transaction, occurrence or series of transactions or occurrences and questions of law or fact common to all defendants will arise in this action.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** **Admitted.**

10. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

**ANSWER:** **Admitted.**

11. This action is commenced, in part, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

**ANSWER:** **Admitted.**

12. As is shown below, there is an actual and justiciable controversy between BCBST and Darwin with regard to the coverage provided under the terms of a FORCEFIELD Healthcare Organizations Management Liability Insurance Policy, number 0304-4558 to BCBST for the policy period March 1, 2012 to March 1, 2013 (the "Darwin Policy"). A copy of the Darwin Policy is attached hereto as Exhibit 1. A declaratory judgment by this Court will affect the rights and interests of the parties.

**ANSWER:     Admitted.**


13.     As is shown below, there is an actual and justiciable controversy between BCBST and Travelers with regard to the coverage provided under the terms of a Managed Care Errors and Omissions Liability Policy, number 104656233 to BCBST for the policy period March 1, 2012 to March 1, 2013 (the "Travelers Policy"). A copy of the Travelers Policy is attached hereto as Exhibit 2. A declaratory judgment by this Court will affect the rights and interests of the parties.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


14.     As is shown below, there is an actual and justiciable controversy between BCBST and Illinois Union with regard to the coverage provided under the terms of an Excess Liability Insurance Policy, number XMS G24560600 004 to BCBST for the policy period March 1, 2012 to March 1, 2013 (the "Illinois Union Policy").  A copy of the Illinois Union Policy is attached hereto as Exhibit 3.  A declaratory judgment by this Court will affect the rights and interests of the parties.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


15.     As is shown below, there is an actual and justiciable controversy between BCBST and Lexington with regard to the coverage provided under the terms of a Managed Care Follow Form Excess Policy, number 035714405 to BCBST for the policy period March 1, 2012 to

March 1, 2013 (the "Lexington Policy"). A copy of the Lexington Policy is attached hereto as Exhibit 4. A declaratory judgment by this Court will affect the rights and interests of the parties.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

16. As is shown below, there is an actual and justiciable controversy between BCBST and Homeland with regard to the coverage provided under the terms of a Follow Form Excess Policy, number MCX-1768-12 to BCBST for the policy period March 1, 2012 to March 1, 2013 (the "Homeland Policy"). A copy of the Homeland Policy is attached hereto as Exhibit 5. A declaratory judgment by this Court will affect the rights and interests of the parties.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

17. BCBST has demanded that Darwin provide coverage under the Darwin Policy for Defense Expenses related to certain underlying claims, described more fully below.

**ANSWER:** **Allied World admits only that BCBST has reported the MDL Action to Allied World, and BCBST has taken the position that the Darwin Policy should respond. Allied World denies that there is coverage for the liability asserted against BCBST in the MDL Action.**

18. Darwin has denied any contractual obligation to pay and/or reimburse BCBST for Defense Expenses related to the underlying claims.

**ANSWER:** **Admitted. There is no coverage for the liability asserted in the MDL Action against BCBST under the Darwin Policy.**

19. BCBST has demanded that Travelers provide coverage under the Travelers Policy for Defense Expenses related to certain underlying claims, described more fully below.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

20. Travelers has denied any contractual obligation to advance and/or reimburse BCBST for Defense Expenses related to the underlying claims.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

21. Each of the Illinois Union, Lexington, and Homeland Policies provides coverage excess of the Darwin Policy and Travelers Policy. The Illinois Union, Lexington, and Homeland Policies follow the form of the Darwin Policy and Travelers Policy; therefore, to the extent Illinois Union, Lexington, and Homeland adopt the coverage positions of Darwin and Travelers, an actual and justiciable controversy exists among the parties.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

22. Accordingly, BCBST seeks relief, *inter alia*, in the nature of a declaration of each defendant's obligation to defend and indemnify BCBST under the Darwin Policy in this case.

**ANSWER:** This averment does not require a response.

23. The Darwin Policy has a $10,000,000 limit for Antitrust Claims and an $10,000,000 aggregate limit of liability for all Claims, with defense expenses within the limit of liability. Darwin Policy, Declarations, Item 4.A and Item 4.F.

**ANSWER: Allied World admits that the Darwin Policy has a $10,000,000 Shared Limit of Liability between the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section. Allied World admits that the Darwin Policy has a $10,000,000 Aggregate Limit of Liability. Allied World also admits that Defense Costs (as defined in the Darwin Policy) are included within the Limit of Liability. The remainder of the allegations are denied.**

24. BCBST is the named Insured on the Declarations page. Darwin Policy, Declarations, Item 1.

**ANSWER: Allied World admits that BlueCross BlueShield of Tennessee, Inc. is the Named Insured under the Darwin Policy.**

25. The Darwin Policy obligates Darwin to pay on behalf of BCBST "**Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for a **Wrongful Act**, and reported to [Darwin] in accordance with Section V. of the General Terms and Conditions."[1] Darwin Policy, D&O Coverage Section, § I.C.

**ANSWER: Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the**

---

[1] Terms appearing in bold type are defined in each of the respective Policies at issue.

quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.

26. The Darwin Policy expressly provides that coverage "is extended to apply to **Claims** arising out of '**Antitrust Activity**'" and obligates Darwin to pay on behalf of BCBST "the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for **Antitrust Activities**, and reported to [Darwin] in accordance with Section V. of the General Terms and Conditions. Darwin Policy, D&O Coverage Section, § I.D and Endorsement No. 4.

**ANSWER**: Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.

27.     The Darwin Policy defines "**Antitrust Activities**" as "price fixing; restraint on trade; monopolization; unfair trade practices; or a violation of the Federal Trade Commission Act, as amended, the Sherman Act, the Clayton Act, as amended, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law." Darwin Policy, D&O Coverage Section, §II.B.

**ANSWER:     Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.**

28.     Endorsement 4 to the Darwin Policy adds the following to the definition of "**Antitrust Activity:**" "any actual or alleged: violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal, state or local statute, rule or regulation or common law." Darwin Policy, Endorsement No. 4.

**ANSWER:     Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the**

- 12 -

contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.

29.     The Darwin Policy broadly defines **Loss** to include, *inter alia*, the following:

(1)  damages, settlements or judgments;

(2)  pre-judgment or post-judgment interest;

(3)  legal costs or attorneys fees awarded by a court in favor of the claimant;

(4)  punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to any applicable Sublimit of Liability, but only to the extent such damages are insurable under the applicable law most favorable to the insurability of such damages;

…; and

(9)  **Defense Costs.**

Darwin Policy, D&O Coverage Section, § II.P.

**ANSWER:**     Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions,

exclusions, and other provisions must be considered and given effect to determine whether there is coverage.

30.     "**Defense Costs**" include, among other things, "reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**…" Darwin Policy, D&O Coverage Section, § II.F.

**ANSWER**:     **Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.**

31.     The Darwin Policy expressly requires Darwin to reimburse **Defense Expenses** in excess of the Retention prior to the final disposition of any Claim. Darwin Policy, D&O Coverage Section, § V.E.

**ANSWER**:     **Allied World admits that the Darwin Policy addresses the reimbursement of Defense Costs for certain covered Claims pursuant to its terms, conditions, exclusions, and other provisions. Allied World denies that Defense Costs are owed for the defense of BCBST in the MDL Action. There is no coverage for the MDL Action.**

32. "**Claim**" includes, among other things, any:

(1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**; [or]

(2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

(a) service of a complaint or similar pleading;

(b) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(c) receipt or filing of a notice of charges….

Darwin Policy, D&O Coverage Section, § II.C.

**ANSWER:** **Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy. All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.**

33. "**Wrongful Act**" means, among other things, "any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by the **Company.**"

Darwin Policy, D&O Coverage Section, § II.Z.

**ANSWER:** **Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself. Allied World denies that the**

quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. **Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy.** All of the Darwin Policy's terms, conditions, exclusions, and other provisions must be considered and given effect to determine whether there is coverage.

34.     The Darwin Policy contains an "Other Insurance" clause which provides, in part, that: "The insurance provided by this Policy, other than the Employment Practices Liability Coverage Section, shall apply only as excess over any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this Policy. This Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**. This Policy shall not be subject to the terms and conditions of any other insurance policy." Darwin Policy, General Terms and Conditions, § VII.A.

**ANSWER:**     **Allied World admits that the Darwin Policy includes the words quoted in this paragraph and states that the Darwin Policy speaks for itself.  Allied World denies that the quoted language accurately conveys the limitations on coverage that are present in the contract, in the absence of quoting other exclusions and provisions of the Darwin Policy. Allied World denies that BCBST is entitled to coverage for the liability asserted in the MDL Action under the Darwin Policy.   All of the Darwin Policy's terms, conditions,**

**exclusions, and other provisions must be considered and given effect to determine whether there is coverage.**

35.     The Travelers Policy has a $10,000,000 limit for each Claim, including Antitrust Claims, and an [sic] $10,000,000 aggregate limit of liability for all Claims, with defense expenses within the limit of liability. Travelers Policy, Declarations, Item 5.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

36.     BCBST is the named Insured on the Declarations page. Travelers Policy, Declarations, Item 1.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

37.     The Travelers Policy obligates Travelers to pay on behalf of BCBST "**Loss** for any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period for a **Wrongful Act**." Travelers Policy, Insuring Agreement, § I.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

38.     "**Claim**" includes, among other things:

    (1)   a written demand for monetary damages or non-monetary relief; [or]

> (2)   a civil proceeding commenced by service of a complaint or similar pleading….

Travelers Policy, Definitions, § II.B.

**ANSWER:**   **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

39.     "**Antitrust Claim**" means "any **Claim** based upon or arising out of any actual or alleged violation of any law, including any federal, state or local statute, rule, regulation or common law relating to antitrust, the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts or practices in trade or commerce, including any actual or alleged violation of the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act, the Hart-Scott Rodino Antitrust Improvements Act or any rule or regulation promulgated thereunder." Travelers Policy, Definitions, § II.A.

**ANSWER:**   **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

40.     The Travelers Policy broadly defines **Loss** to include, *inter alia*, "**Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements, judgments, compensatory damages, punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages, prejudgment and post judgment interest, and legal fees and expenses awarded pursuant to a court order judgment." Travelers Policy, Definitions, § II.K.

**ANSWER:**   **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41.    The Travelers Policy further provides that "**Loss** will include civil fines and penalties and the multiplied portion of any multiplied damage award for **Antitrust Claims**, but only if insurable under the applicable law most favorable to the insurability of such fines, penalties and the multiplied portion of any multiplied damage award." Travelers Policy, Definitions, § II.K.

**ANSWER:    Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

42.    The Travelers Policy specifically requires Travelers to advance Defense Expenses. Travelers Policy, Conditions, § III.E.2.b.

**ANSWER:    Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

43.    "**Defense Expenses**" means "reasonable and necessary legal fees and expenses incurred by the **Company** or the **Insured**, with the **Company's** consent, in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such **Claim**; provided, that **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any employee of such **Insured**." Travelers Policy, Definitions, Section, § II.F.

**ANSWER:    Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

44. "**Wrongful Act**" means, among other things, "any actual or alleged act, error or omission in the performance of, or failure to perform, a **Managed Care Activity**." Travelers Policy, Definitions, § II.V.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

45. "**Managed Care Activity**" means:

"any of the following services or activities performed by or on behalf of the Insured for or under any workers' compensation plan, life insurance plan, short term or long term disability plan, or health care plan, including any consumer directed health care plan, behavioral health plan, prescription drug plan, dental plan or vision plan:

    1)    **Provider Selection;**

    2)    **Utilization Review;**

    3)    advertising, marketing, selling, enrollment, administration or management;

    4)    **Claim Services**;

    5)    establishing or maintaining health care provider networks;

    6)    reviewing, profiling or tiering quality or costs of, or providing quality assurance of, any provider of **Medical Services**;

    7)    design or implementation of benefit plans or financial incentive plans, including pay for performance programs, that compensate providers of **Medical Services**;

    8)    **Disease Management;**

    9)    **Health Care Plan Consulting;**

    10)    risk management services to any provider of **Medical Services**;

- 20 -

11)      **Wellness Services;**

12)      development or implementation of clinical guidelines, practice parameters or protocols; or

13)      triage for payment of **Medical Services**.

Travelers Policy, Definitions, § II.L.

**<u>ANSWER</u>:      Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46.      The Travelers Policy contains an "Other Insurance" clause that provides, in part, that: "This **Liability Coverage** applies as excess insurance over, and will not contribute with any other valid and collectible insurance available to the **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**. This **Liability Coverage** will not be subject to the terms of any other insurance." Travelers Policy, Conditions, § V.C.

**<u>ANSWER</u>:      Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

47.      The Illinois Union Policy is an excess insurance policy that has a $10,000,000 limit for each Claim and an $10,000,000 aggregate limit of liability for all Claims.  Illinois Union Policy, Declarations, Item 5.

**<u>ANSWER</u>:      Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

48.     The Illinois Union Policy follows the form of both the Darwin Policy and Travelers Policy. Illinois Union Policy, Endorsement 6.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

49.     The Illinois Union Policy provides that:

It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after:

> 1.  the insurer(s) of the Underlying Policies; or
>
> 2.  the Insureds: (a) pursuant to an agreement with the insurer(s) of the Underlying Policies; or (b) because of the financial insolvency of the insurer(s) of the Underlying Policies; shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy. Nothing in this subsection shall preclude the Insurer of this Policy from considering any of the other terms, conditions, limitations and exclusions of this Policy, the Followed Policy, or any Underlying Policy, in determining whether any Loss is covered under this Policy. Any payments by the Insureds shall be subject to the same terms and conditions for any such payments by the insurer(s) of the Underlying Policies. Any such payments by the Insureds in any Claim shall not be recognized as reducing or exhausting the Underlying Limits for any other Claim.

Illinois Union Policy, Limit of Liability, § II.A as amended by Endorsement 3.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

50.     The terms "Claim" and "Loss" have the same meaning under the Illinois Union Policy as they have under the Darwin Policy and Travelers Policy. Illinois Union Policy, Definitions, § III.A.

- 22 -

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

51.     The Illinois Union Policy is "subject to the same representations as are contained in the Application for any Underlying Policy and the same terms, definitions, conditions, exclusions and limitations (except as regards the premium, the limits of liability, the policy period and except as otherwise provided herein) as are contained in or as may be added to the [Darwin Policy and Travelers Policy] and, to the extent coverage is further limited or restricted thereby, to any other Underlying Policies. In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies." Illinois Union Policy, Underlying Insurance, § IV.A.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

52.     The Lexington Policy is an excess insurance policy that has a $10,000,000 limit for each Claim and an $10,000,000 aggregate limit of liability for all Claims. Lexington Policy, Declarations, Item 3.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

53.     The Lexington Policy follows the Illinois Union Policy. Lexington Policy, Declarations, Item 6.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

54. The Lexington Policy attaches upon the exhaustion of the **Underlying Limits**, which total $20,000,000. Lexington Policy, Declarations, Item 7; Lexington Policy, Insuring Agreement, § I.A

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

55. The Homeland Policy is an excess insurance policy that has a $10,000,000 limit for each Claim and an $10,000,000 aggregate limit of liability for all Claims. Homeland Policy, Declarations, Item 3.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

56. The Homeland Policy is excess of "Underlying Insurance," which is defined as the Travelers Policy, the Darwin Policy, the Illinois Union Policy, and the Lexington Policy. Homeland Policy, Endorsement 1.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

57. With certain exceptions, the Homeland Policy follows the terms, conditions, agreements, exclusions, definitions and endorsements of the Underlying Insurance. Homeland Policy, Insuring Agreement, § I.D.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

58. In 2012, numerous class actions were filed against various Blue Cross Blue Shield entities or member plans (the "Blue Plans") and the Blue Cross Blue Shield Association ("BCBSA"), alleging violations of antitrust laws. BCBST was a defendant in certain of these class actions and reported the claims to Darwin, Travelers, Illinois Union, Lexington and Homeland during the Policy Period in each of the respective Policies.

**ANSWER:** **Allied World admits that in 2012, numerous class actions were filed against certain Blue Plans (including BCBST), and others. Allied World admits that BCBST reported certain of these class actions to Allied World. Allied World is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

59. In December 2012, the Judicial Panel on Multidistrict Litigation consolidated and transferred several of these actions to the United States District Court for the Northern District of Alabama, creating the MDL litigation styled *In Re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "Antitrust Litigation").

**ANSWER:** **Admitted.**

60. In July 2013, subscribers to the various Blue Plans (the "Subscribers") filed a Consolidated Amended Complaint (the "Subscriber Consolidated Amended Complaint") against the Blue Plans, including BCBST, and the BCBSA. A copy of the Subscriber Consolidated Amended Complaint is attached hereto as Exhibit 6.

**ANSWER: Admitted**

61. Also in July 2013, various providers (the "Providers") filed a Consolidated Amended Complaint (the "Provider Consolidated Complaint") against the Blue Plans, including BCBST, and the BCBSA. A copy of the Provider Consolidated Amended Complaint is attached hereto as Exhibit 7.

**ANSWER: Admitted.**

62. The Subscribers and Providers allege, among other things, that the Blue Plans, including BCBST, violated federal antitrust laws and engaged in price fixing and/or anticompetitive activities.

**ANSWER: Allied World admits only that the MDL Action contains allegations regarding violations of federal antitrust laws, price fixing, and anti-competitive activities. Allied World denies that these allegations accurately convey the entirety of the allegations against BCBST in the MDL Action. Other allegations are present in the MDL Action that implicate the Darwin Policy's terms, conditions, exclusions, and provisions that limit the coverage provided by the Darwin Policy.**

63.     The allegations of the Subscribers and Providers in the Antitrust Litigation fall squarely within the coverage afforded by each of the defendants' Policies.

**ANSWER:     Denied.**

64.     BCBST provided timely notice to Darwin of the Antitrust Litigation.

**ANSWER:     Allied World admits that given the information presently available to it, it appears that notice was timely provided.   Allied World has reserved its rights to deny coverage if information is revealed indicating that notice was not timely provided and Allied World continues to reserve its rights in this regard.**

65.     On December 26, 2012, Darwin advised that it was aware that the Judicial Panel on Multidistrict Litigation consolidated and transferred multiple lawsuits to the MDL Antitrust Litigation in the Northern District of Alabama. Darwin advised that "it would be premature to take a position regarding coverage for [one of the actions transferred to the MDL] (and the other actions subject to transfer) until a consolidated, amended complaint is filed." Darwin advised that it would issue a coverage position upon the filing of a consolidated, amended complaint in the Antitrust Litigation. A copy of the December 26, 2012 correspondence is attached hereto as Exhibit 8.

**ANSWER:     Allied World admits that on December 26, 2012, it wrote a letter to BCBST in which it stated, among other things, that it was aware that the Judicial Panel on Multidistrict Litigation consolidated and transferred multiple lawsuits to the MDL Action in the Northern District of Alabama.  Darwin also admits that the quoted language appears in Exhibit 8.  Notwithstanding the foregoing, the letter speaks for itself.**

66.     On December 23, 2013, more than five months after the Consolidated Amended Complaints were filed, Heidi Raschke, Esq., an attorney with the law firm of Carlton Fields Jorden Burt ("Carlton Fields"), wrote to coverage counsel for BCBST. Carlton Fields advised that it had been retained by Darwin as coverage counsel. Carlton Fields further advised that Darwin was in the process of making its coverage determination with respect to the Antitrust Litigation. A copy of the December 23, 2013 correspondence is attached hereto as Exhibit 9.

**ANSWER:     Allied World admits only that Exhibit 9 is dated December 23, 2013, was written by Ms. Raschke of Carlton Fields, advised that Carton Fields was coverage counsel, and advised that Allied World was in the process of making its coverage determination. Allied World denies that these aspects of Exhibit 9 convey the entirety of the letter, which speaks for itself.**

67.     Carlton Fields also advised, in separate correspondence to coverage counsel for certain other Blue Plans, that Darwin retained Carlton Fields to evaluate both E&O and D&O coverage for certain of the other Blue Plans that were insured by Darwin.

**ANSWER:     Allied World admits that counsel from Carlton Fields sent correspondence to certain other Blue Plans insured by Allied World indicating that Carlton Fields had been retained as coverage counsel with respect to the MDL Action.  The referenced letters speak for themselves.  Allied World denies that such correspondence is relevant to the dispute with BCBST.  The remaining allegations are denied.**

68.     On January 13, 2014, coverage counsel for BCBST and other Blue Plans wrote to Carlton Fields and advised that in the event Darwin simultaneously accepts coverage under one line of business and denies coverage under another line of business, Darwin should assign separate counsel such that the defense of the Antitrust Litigation is not monitored by the same counsel that evaluates coverage issues. Counsel for BCBST advised that serious ethical and legal issues exist when a carrier does not assign separate monitoring and coverage counsel.

**ANSWER:     Allied World admits that it received an email from Jennifer Black Strutt dated January 13, 2014 who identified herself as "insurance coverage counsel to several Blue Cross Blue Shield Plans" in connection with the MDL Action.  Allied World admits that the email requested that Allied World use separate counsel for monitoring and coverage.  The remainder of the allegations in the paragraph are denied.**

69.     On January 17, 2014, Carlton Fields advised that "Darwin is in the process of making its coverage determination with respect to this matter and its position letters will be forthcoming soon." Carlton Fields further advised that "Darwin does not agree that 'splitting' files or establishing ethical walls is warranted at this time."

**ANSWER:     Allied World admits only that its counsel sent a letter dated January 17, 2014 that contained the quoted language.  The remainder of the allegations in the paragraph are denied.**

70.     On March 4, 2014, Darwin accepted coverage under certain of its Managed Care Organization Errors and Omissions Liability Policies issued to certain of the Blue Plans (collectively, "E&O Policies") and denied coverage under its FORCEFIELD Healthcare

Organizations Directors and Officers Liability Policies issued to certain of the Blue Plans (collectively, the "D&O Policies"), including the D&O Policy issued to BCBST at issue in this litigation. A copy of the March 4, 2014 correspondence is attached hereto as Exhibit 10.

**ANSWER:** **Allied World admits only that it denied coverage to BCBST under the Darwin Policy on March 4, 2014. The letter attached as Exhibit 10 speaks for itself.**

71.     After Darwin denied coverage to BCBST, coverage counsel for BCBST reiterated the serious ethical and legal issues that surround Carlton Fields' involvement as monitoring counsel on claims for which Darwin accepted coverage while simultaneously acting as coverage counsel on claims for which Darwin denied its coverage obligations. Darwin refused to assign separate counsel, and, through Carlton Fields, continued to seek information related to the Antitrust Litigation from the Blue Plans for which it had accepted coverage subject to a reservation of rights.

**ANSWER:** **Allied World admits only that BCBST objected to Carlton Fields acting as monitoring counsel and as coverage counsel and that Allied World disagreed with BCBST's position. The remainder of the allegations in the paragraph are denied.**

72.     BCBST challenged Darwin's coverage position, and on October 10, 2014, Darwin filed this lawsuit against BCBST. Darwin also filed a lawsuit in the Western District of New York seeking a declaration that it has no obligation to provide D&O or E&O coverage to HealthNow Systems, Inc. ("HealthNow") for the Antitrust Litigation. Carlton Fields is counsel to Darwin in both of the litigations.

**ANSWER:** Allied World admits that by letter dated September 17, 2014, BCBST asked Allied World to withdraw its denial of coverage, and that Allied World has filed declaratory judgment actions regarding its obligations, if any, for the liability asserted against BCBST and HealthNow under the insurance policies issued to those two companies. Allied World also admits that the law firm of Carlton Fields Jorden Burt represents it in both those actions. The remainder of the allegations in the paragraph are denied.

73. Notwithstanding that Carlton Fields represents Darwin in coverage litigation against two of the Blue Plans involved in the Antitrust Litigation, Darwin continues to engage Carlton Fields as monitoring counsel to those Blue Plans for which Darwin accepted its coverage obligations – including Blue Plans who, along with BCBST, are being jointly defended by the same law firm (Hogan Lovells).

**ANSWER:** Allied World admits that Carlton Fields Jorden Burt is acting both as litigation counsel and monitoring counsel. Allied World denies that there is anything improper or unethical about this relationship. The remainder of the allegations in the paragraph are denied.

74. Counsel for BCBST has repeatedly requested that Carlton Fields withdraw as monitoring counsel, and advised that Darwin's failure to retain separate monitoring and coverage counsel constitutes bad faith.

**ANSWER:** Allied World admits that BCBST has taken this position, but denies that BCBST is correct. Allied World denies that its selection of counsel amounts to bad faith. The remainder of the allegations in the paragraph are denied.

75.     BCBST provided timely notice to Travelers of the Antitrust Litigation.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

76.     By letter dated August 23, 2013, Travelers, through its coverage counsel, provided its coverage position concerning the Subscriber and Provider Consolidated Amended Complaints. Travelers accepted coverage subject to a reservation of rights, and requested that BCBST provide certain information. A copy of the August 23, 2013 correspondence is attached hereto as Exhibit 11.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

77.     By letter dated December 5, 2013, Travelers, through its coverage counsel, supplemented its coverage position. Travelers denied coverage for the Provider action on the grounds that, *inter alia*, the Prior and Pending Proceeding exclusion of the Travelers Policy bars coverage. A copy of the December 5, 2013 correspondence is attached hereto as Exhibit 12.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

78.     In its denial, Travelers took the incorrect position that the Antitrust Litigation is based on or arises out of facts and circumstances that were alleged in a prior action styled *Love v. Blue Cross and Blue Shield Association, et al.*, Case. No. 03-21296 (S.D. Fl. 2003) (the "Love

Action"), and is therefore excluded from coverage pursuant to Section III.A.3 of the Travelers' Policy.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

79.     Travelers also denied coverage for the Subscriber action, taking the incorrect position that, *inter alia*, the Subscriber Consolidated Amended Complaint does not involve Managed Care Activity as defined in the Travelers Policy.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

80.     By letter dated September 23, 2014, counsel for BCBST disputed Travelers' denial of coverage and provided notice that if Travelers failed to rescind its denial, BCBST would, in accordance with Tenn. Code § 56-7-105(a), assert a bad faith claim against Travelers. A copy of the September 23, 2014 correspondence is attached hereto as Exhibit 13. Travelers failed to respond to BCBST's letter.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

81.     BCBST provided timely notice to Illinois Union, Lexington, and Homeland of the Antitrust Litigation.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

- 33 -

82.     By letter dated October 23, 2014, Illinois Union advised BCBST that it reserved its rights regarding the Prior or Pending Proceeding Exclusion. A copy of the October 23, 2014 correspondence is attached hereto as Exhibit 14.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

83.     Illinois Union further advised that, because both Travelers and Darwin denied coverage under their respective primary policies, coverage under the Illinois Union Policy would not be triggered unless or until Travelers and/or Darwin pays their limits in full.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  The letter speaks for itself.**

84.     Neither Lexington nor Homeland have accepted their coverage obligations under their respective policies.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

85.     The allegations of paragraphs 1 through 84 of this Counterclaim are incorporated herein by reference.

**<u>ANSWER</u>:     Allied World incorporates by reference its responses to paragraphs 1 through 84.**

86.     BCBST has paid substantial premiums to Darwin for coverage under the Darwin Policy. BCBST has at all times complied with all relevant provisions of the Darwin Policy, including the giving of timely notice.

**ANSWER**:    **Allied World admits that BCBST has paid the premiums for the Darwin Policy.  Regarding notice, Allied World admits that given the information presently available to it, it appears that notice was timely provided.  Allied World has reserved its rights to deny coverage if information is revealed indicating that notice was not timely provided and Allied World continues to reserve its rights in this regard.  The remainder of the allegations in the paragraph are denied.**


87.     The Antitrust Litigation triggers Darwin's obligation to pay on behalf of BCBST **Loss** arising from the Antitrust Litigation, including but not limited to **Defense Costs**.

**ANSWER**:    **Denied.**


88.     BCBST made a timely demand upon Darwin to perform its obligations under the Darwin Policy. However, Darwin has denied coverage for **Defense Costs** on the erroneous grounds that certain allegations do not trigger coverage and/or that certain exclusions bar coverage for the Antitrust Litigation.

**ANSWER**:    **Allied World admits that given the information presently available to it, it appears that notice of BCBST's claim was timely provided.  Allied World has reserved its rights to deny coverage if information is revealed indicating that notice was not timely provided and Allied World continues to reserve its rights in this regard.  Allied World admits that it has denied coverage for BCBST's claim based on the terms, conditions,**

**exclusions, and other provisions.  The remainder of the allegations in the paragraph are denied.**

89.     An actual, immediate and justiciable controversy exists between BCBST and Darwin concerning Darwin's obligations under the Darwin Policy to pay or reimburse Loss, including **Defense Costs** incurred by BCBST in connection with the Antitrust Litigation.

**ANSWER:     Admitted.**

90.     BCBST is in need of the Court's assistance in resolving the parties' differing interpretations of the provisions and exclusions of the Darwin Policy.

**ANSWER:     Denied.**

91.     Further, due to the competing "Other Insurance" provisions in the Darwin Policy and Travelers Policy, BCBST is in need of the Court's assistance in allocating the respective obligations of Darwin and Travelers.

**ANSWER:     Denied.**

**WHEREFORE**, BCBST respectfully requests that this Court issue a declaration that:

(a) under the terms of the Darwin Policy, Darwin has a duty to pay on behalf of BCBST all **Loss** arising from the Antitrust Litigation within the limits of the Darwin Policy;

(b) under the terms of the Darwin Policy, Darwin has a duty to indemnify and reimburse BCBST for the fees, expenses, and costs already incurred by BCBST in defense of the Antitrust Litigation;

- 36 -

(c) Darwin must reimburse BCBST for fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action;

(d) Darwin and Travelers must pay their allocated share of **Loss**, such allocation to be determined by the Court, arising from the Antitrust Litigation; and

(e) such other relief as the Court deems appropriate.

**ANSWER:** **Allied World denies that BCBST is entitled to any relief in this action from or relating to its causes of action against Allied World.**

92. The allegations of paragraphs 1 through 91 of this Counterclaim are incorporated herein by reference.

**ANSWER:** **Allied World incorporates by reference its responses to paragraphs 1 through 91.**

93. BCBST has paid substantial premiums to Travelers for coverage under the Travelers Policy. BCBST has at all times complied with all relevant provisions of the Travelers Policy, including the giving of timely notice. BCBST has paid **Defense Expenses** for the Antitrust Litigation in excess of the applicable retention of the Travelers Policy.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

94. The Antitrust Litigation triggers Travelers obligation to pay on behalf of BCBST **Loss** arising from the Antitrust Litigation, including but not limited to **Defense Expenses**.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

- 37 -

95.     BCBST made a timely demand upon Travelers to perform its obligations under the Travelers Policy. However, Travelers has denied coverage for **Defense Expenses** on the erroneous grounds that certain allegations do not trigger coverage and/or that certain exclusions bar coverage for the Antitrust Litigation.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

96.     An actual, immediate and justiciable controversy exists between BCBST andTravelers concerning Travelers' obligations under the Travelers Policy to pay or reimburse Loss, including **Defense Expenses** incurred by BCBST in connection with the Antitrust Litigation.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

97.      BCBST is in need of the Court's assistance in resolving the parties' differing interpretations of the provisions and exclusions of the Travelers Policy.

**<u>ANSWER</u>:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

98.     Further, due to the competing "Other Insurance" provisions in the Darwin Policy and Travelers Policy, BCBST is in need of the Court's assistance in allocating the respective obligations of Darwin and Travelers.

37454691.2

**ANSWER:** Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

WHEREFORE, BCBST respectfully requests that this Court issue a declaration that:

(a) under the terms of the Travelers Policy, Travelers has a duty to pay on behalf of BCBST all **Loss** arising from the Antitrust Litigation within the limits of the Travelers Policy;

(b) under the terms of the Travelers Policy, Travelers has a duty to indemnify and reimburse BCBST for the fees, expenses, and costs already incurred by BCBST in defense of the Antitrust Litigation and to advance defense expenses on an ongoing basis;

(c) Travelers must reimburse BCBST for fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action;

(d) Darwin and Travelers must pay their allocated share of **Loss**, such allocation to be determined by the Court, arising from the Antitrust Litigation; and

(e) such other relief as the Court deems appropriate.

**ANSWER:** Allied World is without knowledge or information sufficient to form a belief as to whether BCBST is entitled to any relief from Travelers.

99. The allegations of Paragraphs 1 through 98 of this Counterclaim are incorporated herein by reference, as though fully set forth herein.

**ANSWER:** Allied World incorporates by reference its responses to paragraphs 1 through 98.

100. Darwin, under the Darwin Policy, contracted to pay on behalf of BCBST any **Loss** that arises from a **Claim** that is first made during the Policy Period.

**ANSWER:** **Allied World admits only that the Darwin Policy insures against certain defined losses, subject to all the terms, conditions, exclusions, and other provisions of the Darwin Policy, which speaks for itself. Allied World denies any remaining allegations in this paragraph.**

101. Darwin breached and continues to breach its obligations to BCBST by failing and refusing to fulfill its obligation to pay and/or reimburse BCBST's defense costs with respect to the Antitrust Litigation.

**ANSWER:** **Denied.**

102. As a result of these breaches of contract, Darwin has deprived and continues to deprive BCBST of the benefit of the insurance protection for which substantial premiums have been paid.

**ANSWER:** **Denied.**

103. As a result of Darwin's breaches of contract, BCBST has been forced to resort to self-help measures in the nature of, *inter alia*, retaining and paying attorneys to defend against the Antitrust Litigation and has been forced to pay the costs associated with this defense.

**ANSWER:** **Denied.**

104.    Accordingly, Darwin is liable to BCBST in at least the amount of BCBST's expenditures in investigating and defending against the Antitrust Litigation, as well as any amounts BCBST is legally obligated to pay, whether by judgment, settlement, or otherwise, to resolve the Antitrust Litigation.

**ANSWER:    Denied.**


WHEREFORE, BCBST respectfully requests that this Court:

(a) Award BCBST its attorneys' fees and associated costs, interest, and all other reasonable and necessary costs of investigating and defending the Antitrust Litigation;

(b) Award BCBST the amounts it is obligated to pay, whether by judgment, settlement, or otherwise, to resolve the Antitrust Litigation;

(c) Award BCBST compensatory, consequential and punitive damages;

(d) Award BCBST any available statutory remedies;

(e) Assess court costs, attorney fees and interest against Darwin; and

(f) Award BCBST such other relief as the Court deems appropriate.

**ANSWER:    Allied World denies that BCBST is entitled to any relief in this action from or relating to its causes of action against Allied World.**


105.    The allegations of Paragraphs 1 through 104 of this Counterclaim are incorporated herein by reference, as though fully set forth herein.

**ANSWER:    Allied World incorporates by reference its responses to paragraphs 1 through 104.**

106.     Travelers, under the Travelers Policy, contracted to pay on behalf of BCBST any **Loss** that arises from a **Claim** that is first made during the Policy Period.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


107.     Travelers breached and continues to breach its obligations to BCBST by failing and refusing to fulfill its obligation to pay, reimburse and/or advance BCBST's defense costs with respect to the Antitrust Litigation.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


108.     As a result of these breaches of contract, Darwin has deprived and continues to deprive BCBST of the benefit of the insurance protection for which substantial premiums have been paid.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


109.     As a result of Travelers' breaches of contract, BCBST has been forced to resort to self-help measures in the nature of, *inter alia*, retaining and paying attorneys to defend against the Antitrust Litigation and has been forced to pay the costs associated with this defense.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

110.   Accordingly, Travelers is liable to BCBST in at least the amount of BCBST's expenditures in investigating and defending against the Antitrust Litigation, as well as any amounts BCBST is legally obligated to pay, whether by judgment, settlement, or otherwise, to resolve the Antitrust Litigation.

**ANSWER:   Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


WHEREFORE, BCBST respectfully requests that this Court:

(a)  Award BCBST its attorneys' fees and associated costs, interest, and all other reasonable and necessary costs of investigating and defending the Antitrust Litigation;

(b)  Award BCBST the amounts it is obligated to pay, whether by judgment, settlement, or otherwise, to resolve the Antitrust Litigation;

(c)  Award BCBST compensatory and consequential damages;

(d)  Award BCBST any available statutory remedies;

(e)  Assess court costs, attorney fees and interest against Travelers; and

(f)  Award BCBST such other relief as the Court deems appropriate.

**ANSWER:   Allied World is without knowledge or information sufficient to form a belief as to whether BCBST is entitled to any relief against Travelers.**


111.   The allegations of paragraphs 1 through 110 of this Counterclaim are incorporated herein by reference as though fully set forth.

**ANSWER:   Allied World incorporates by reference its responses to paragraphs 1 through 110.**

112.     Darwin's refusal to investigate adequately and agree to pay BCBST's defense costs in the Antitrust Litigation constitutes bad faith.

**ANSWER:**     **Denied.**

113.     Notwithstanding the Darwin Policy's express grant of coverage for **Antitrust Activities**, Darwin takes the position that the Antitrust Litigation is excluded from coverage under the Darwin Policy. Darwin's position renders coverage for **Antitrust Activities** illusory.

**ANSWER:**     **Denied.**

114.     Darwin acted in bad faith because it had no fairly debatable reason to deny coverage and/or because its denial of coverage is unreasonable under the totality of the circumstances.

**ANSWER:**     **Denied.**

115.     In evaluating its obligations under the Darwin Policy, Darwin has been less than honest, intelligent, and fair.

**ANSWER:**     **Denied.**

116.     In evaluating its obligations under the Darwin Policy, Darwin has failed to accord the interests of BCBST the same faithful consideration that it has given its own interests and has, instead, ignored the interests of BCBST.

**ANSWER:**     **Denied.**

117. In evaluating its obligations under the Darwin Policy, Darwin has failed to use the same degree of care and diligence as a person of ordinary care and prudence would exercise in the management of his own business.

**ANSWER: Denied.**

118. Darwin has failed to perform its duty to read the Complaints in the Antitrust Litigation with all doubts as to whether the claim may fall within the coverage of the Darwin Policy resolved in favor of BCBST.

**ANSWER: Denied.**

119. Darwin lacked a reasonable basis to deny coverage to BCBST and knew or recklessly disregarded its lack of a reasonable basis.

**ANSWER: Denied.**

120. Darwin acted with ill will and/or an improper motivation in denying coverage.

**ANSWER: Denied.**

121. Darwin's bad faith conduct includes, but is not limited to:

    a)   failing to adopt and implement standards for the proper investigation of claims;

    b)    misrepresenting pertinent facts or insurance policy provisions related to coverages at issue;

    c)   failing to acknowledge and act promptly upon communications with respect to claims;

d) failing to promptly notify the insured of any additional information necessary for the processing of a claim;

e) failing to clearly explain the nature of the requested information and the reasons why such information is necessary;

f) continually seeking further and additional information, despite being provided with access to the information reasonably required to make payment under the Darwin Policy, in an effort to delay and/or avoid payment;

g) failing in good faith to effectuate prompt, fair and equitable settlement of BCBST's claim once its liability became reasonably clear;

h) compelling BCBST to defend against Darwin's coverage action and to commence this counterclaim to obtain declaratory relief and to recover amounts due under the Darwin Policy;

i) compelling BCBST to fund its defense of the Antitrust Litigation as well as incur legal expenses associated with this litigation;

j) failing to provide a reasonable explanation of the basis, under the applicable facts or law, for its denial of coverage; and

k) engaging Carlton Fields to seek confidential information related to the Antitrust Litigation from Blue Plans for which Darwin has accepted coverage while simultaneously litigating coverage issues against BCBST and HealthNow.

**ANSWER:** **Denied.**

122. Darwin's denial of coverage was willful, wanton, and/or malicious, and made with reckless indifference to the plight of BCBST.

**ANSWER:** **Denied.**

123. Upon information and belief, Darwin's bad faith conduct occurs with such frequency as to indicate a general business practice.

**ANSWER:** **Denied.**

124. BCBST has been harmed as a result of Darwin's bad faith conduct.

**ANSWER:** **Denied.**

125. On September 17, 2014, BCBST served a formal demand for payment under Tenn. Code § 56-7-105(a), and advised Darwin that if Darwin continued to ignore its coverage obligations, BCBST would pursue all remedies, including but not limited to punitive damages equaling twenty-five percent (25%) of Darwin's liability for **Loss** related to the Antitrust Litigation.

**ANSWER:** **Darwin admits only that BCBST sent a letter dated September 17, 2014, and said letter speaks for itself. The remainder of the allegations in this paragraph are denied.**

126. Over sixty (60) days has elapsed since BCBST served its demand under Tenn. Code § 56-7-105(a), and not only has Darwin refused to accept its coverage obligations, it filed the present litigation against BCBST.

**ANSWER:** **Darwin admits only that more than sixty days have passed since BCBST sent its letter dated September 17, 2014 and that it filed the present litigation. The remainder of the allegations in this paragraph are denied.**

WHEREFORE, BCBST respectfully requests that this Court:

(a) Award BCBST compensatory, consequential and punitive damages resulting from Darwin's bad faith refusal to pay BCBST's defense costs in the Antitrust Litigation;

(b) Award BCBST any available statutory remedies, including a statutory bad faith penalty of twenty-five percent (25%) of Darwin's liability for **Loss** related to the Antitrust Litigation;

(c) Assess court costs, attorney fees and interest against Darwin; and

(d) Award BCBST such other relief as the Court deems appropriate.

**ANSWER:** **Allied World denies that BCBST is entitled to any relief in this action from or relating to its causes of action against Allied World.**

127.    The allegations of paragraphs 1 through 126 of this Counterclaim are incorporated herein by reference as though fully set forth.

**ANSWER:** **Allied World incorporates by reference its responses to paragraphs 1 through 126.**

128.    Travelers' refusal to investigate adequately and agree to advance and/or pay BCBST's defense costs in the Antitrust Litigation constitutes bad faith.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

129.    Notwithstanding the Travelers Policy's express grant of coverage for **Antitrust Claims**, Travelers takes the position that the Antitrust Litigation does not trigger coverage and/or is excluded from coverage under the Travelers Policy. Travelers' position renders coverage for **Antitrust Claims** illusory.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

130.　Travelers acted in bad faith because it had no fairly debatable reason to deny coverage and/or because its denial of coverage is unreasonable under the totality of the circumstances.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

131.　In evaluating its obligations under the Travelers Policy, Travelers has been less than honest, intelligent, and fair.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

132.　In evaluating its obligations under the Travelers Policy, Travelers has failed to accord the interests of BCBST the same faithful consideration that it has given its own interests.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

133.　In evaluating its obligations under the Travelers Policy, Travelers has failed to use the same degree of care and diligence as a person of ordinary care and prudence would exercise in the management of his own business.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

134.     Travelers has failed to perform its duty to read the Complaints in the Antitrust Litigation with all doubts as to whether the claim may fall within the coverage of the Travelers Policy resolved in favor of BCBST.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

135.     Travelers lacked a reasonable basis to deny coverage to BCBST and knew or recklessly disregarded its lack of a reasonable basis.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

136.     Travelers' bad faith conduct includes, but is not limited to:

    a)   failing to adopt and implement standards for the proper investigation of claims;

    b)   misrepresenting pertinent facts or insurance policy provisions related to coverages at issue;

    c)   failing to acknowledge and act promptly upon communications with respect to claims;

    d)   failing to promptly notify the insured of any additional information necessary for the processing of a claim;

    e)   failing to clearly explain the nature of the requested information and the reasons why such information is necessary;

f) continually seeking further and additional information, despite being provided with access to the information reasonably required to make payment under the Travelers Policy, in an effort to delay and/or avoid payment;

g) failing in good faith to effectuate prompt, fair and equitable settlement of BCBST's claim once its liability became reasonably clear;

h) compelling BCBST to commence this Counterclaim to obtain declaratory relief and to recover amounts due under the Travelers Policy;

i) compelling BCBST to fund its defense of the Antitrust Litigation as well as incur legal expenses associated with this litigation; and

j) failing to provide a reasonable explanation of the basis, under the applicable facts or law, for its denial of coverage.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

137. BCBST has been harmed as a result of Travelers' bad faith conduct.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

138. On September 23, 2014, BCBST served a formal demand for payment under Tenn. Code § 56-7-105(a), and advised Travelers that if Travelers continued to ignore its coverage obligations, BCBST would pursue all remedies, including but not limited to a statutory bad faith penalty equaling twenty-five percent (25%) of Travelers' liability for **Loss** related to the Antitrust Litigation.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

139. Over sixty (60) days has elapsed since BCBST served its demand under Tenn. Code § 56-7-105(a), and Travelers has refused to accept its coverage obligations.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

WHEREFORE, BCBST respectfully requests that this Court:

(a) Award BCBST compensatory, and consequential damages resulting from Travelers' bad faith refusal to pay BCBST's defense costs in the Antitrust Litigation;

(b) Award BCBST any available statutory remedies, including a statutory bad faith penalty of twenty-five percent (25%) of Travelers' liability for **Loss** related to the Antitrust Litigation;

(c) Assess court costs, attorney fees and interest against Travelers; and

(d) Award BCBST such other relief as the Court deems appropriate.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as whether BCBST is entitled to any relief from Travelers.**

140. The allegations of paragraphs 1 through 139 of this Counterclaim are incorporated herein by reference.

**ANSWER:** **Allied World incorporates by reference its responses to paragraphs 1 through 139.**

141. BCBST has paid substantial premiums to Illinois Union, Lexington, and Homeland for excess insurance coverage under their respective Policies. BCBST has at all times

complied with all relevant provisions of the Illinois Union Policy, Lexington Policy, and Homeland Policy, including the giving of timely notice.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

142.     Subject to the erosion of any applicable retention and/or exhaustion of underlying insurance, the Antitrust Litigation triggers Illinois Union's, Lexington's, and Homeland's obligation to pay on behalf of BCBST **Loss** arising from the Antitrust Litigation, including but not limited to **Defense Costs** and/or **Defense Expenses**.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

143.     Illinois Union, Lexington, and Homeland have refused to acknowledge their obligation to pay Loss, including defense costs.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

144.     Because the Illinois Union Policy follows form to the Darwin and Travelers Policies, an actual, immediate and justiciable controversy exists between BCBST and Illinois Union concerning Illinois Union's obligations to pay covered Loss, including defense costs incurred by BCBST, upon the exhaustion of the applicable underlying insurance.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

145.     Because the Lexington Policy follows form to the Darwin and Travelers Policies, an actual, immediate and justiciable controversy exists between BCBST and Lexington concerning Lexington's obligations to pay covered Loss, including defense costs incurred by BCBST, upon the exhaustion of the applicable underlying insurance.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


146.     Because the Homeland Policy follows form to the Darwin and Travelers Policies, an actual, immediate and justiciable controversy exists between BCBST and Homeland concerning Homeland's obligations to pay covered Loss, including defense costs incurred by BCBST, upon the exhaustion of the applicable underlying insurance.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


147.     BCBST is in need of the Court's assistance in resolving the parties' differing interpretations of the provisions and exclusions of the Illinois Union Policy, Lexington Policy, and Homeland Policy.

**ANSWER:     Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**


148.     Further, due to the competing "Other Insurance" provisions in the Darwin Policy and Travelers Policy, which policies are followed by Illinois Union, Lexington, and Homeland,

BCBST is in need of the Court's assistance in allocating the respective obligations of Illinois Union, Lexington, and Homeland.

**ANSWER:** **Allied World is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

**WHEREFORE**, BCBST respectfully requests that this Court issue a declaration that:

(a) under the terms of the Illinois Union Policy, upon the exhaustion of the applicable underlying insurance, Illinois Union has a duty to pay on behalf of BCBST all **Loss** arising from the Antitrust Litigation within the limits of the Illinois Union Policy;

(b) under the terms of the Illinois Union Policy, upon the exhaustion of the applicable underlying insurance, Illinois Union has a duty to indemnify and reimburse BCBST for the fees, expenses, and costs already incurred by BCBST in defense of the Antitrust Litigation;

(c) under the terms of the Lexington Policy, upon the exhaustion of the applicable underlying insurance, Lexington has a duty to pay on behalf of BCBST all **Loss** arising from the Antitrust Litigation within the limits of the Lexington Policy;

(d) under the terms of the Lexington Policy, upon the exhaustion of the applicable underlying insurance, Lexington has a duty to indemnify and reimburse BCBST for the fees, expenses, and costs already incurred by BCBST in defense of the Antitrust Litigation;

(e) under the terms of the Homeland Policy, upon the exhaustion of the applicable underlying insurance, Homeland has a duty to pay on behalf of BCBST all **Loss** arising from the Antitrust Litigation within the limits of the Homeland Policy;

(f) under the terms of the Homeland Policy, upon the exhaustion of the applicable underlying insurance, Homeland has a duty to indemnify and reimburse BCBST for the fees, expenses, and costs already incurred by BCBST in defense of the Antitrust Litigation;

(g) Illinois Union, Lexington, and Homeland must pay their allocated share of **Loss**, such allocation to be determined by the Court, arising from the Antitrust Litigation; and

(h) such other relief as the Court deems appropriate.

**ANSWER**: **Allied World is without knowledge or information sufficient to form a belief as to whether BCBST is entitled to any relief from Illinois Union, Lexington, and/or Homeland.**

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**

By: s/M. Andrew Pippenger
M. Andrew Pippenger, No. 018183
Tallan Building
200 W. Martin Luther King Blvd., Fifth Floor
Chattanooga, TN 37402
Telephone: (423) 265-0214
Email: andy.pippenger@leitnerfirm.com

Steven J. Brodie, FL Bar No.
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower
100 SE 2nd Street, Suite 4200
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
E-Mail: sbrodie@cfjblaw.com
(*admitted pro hac vice*)

Heidi H. Raschke, FL Bar No. 61183
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Boulevard

- 56 -

Suite 1000
Tampa, Florida 33607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
E-Mail: hraschke@cfjblaw.com
(*admitted pro hac vice*)

Catherine Salinas Acree, GA Bar No. 526563
Meredith W. Caiafa, GA Bar No. 551409
CARLTON FIELDS JORDEN BURT, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia  30309-3455
Telephone: (404) 815-3400
Facsimile: (404) 815-3415
Email: cacree@cfjblaw.com
Email: mcaiafa@cfjblaw.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff Allied World Specialty
Insurance Company f/k/a Darwin National
Assurance Company*

37454691.2

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2015, a copy of the foregoing pleading was filed electronically to effect service of this document upon the counsel of record listed below. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Donald J. Aho
Kyle W. Eiselstein
Miller & Martin, PLLC
Suite 1000 Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402


Joann M. Lytle
Mark D. Villanueva
Jennifer-Black-Strutt
McCarter & English, LLP
BNY Mellon Center
1735 Market Street, Suite 700
Philadelphia, PA 19103

Paul T Curley
Kaufman Borgeest & Ryan, LLP
200 Summit Lake Drive
Valhalla, NY 10595

Wayne E Borgeest
Kaufman Borgeest & Ryan, LLP
200 Summit Lake Drive
Valhalla, NY 10595

Jeffrey S. Price
MANIER & HEROD
150 Fourth Avenue North, Suite 2200
Nashville, TN 37219

s/M. Andrew Pippenger
M. Andrew Pippenger
Counsel for Allied World Specialty Insurance
Company f/k/a Darwin National Assurance
Company

- 58 -